IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES CLIFTON HEMMINGS,

    Plaintiff,

      v.

                                       CIVIL ACTION FILE
                                       NO. 1:17-CV-1331-TWT

CAMPING TIME RV CENTERS,
LLC doing business as
Camping World RV Sales, et al.,

    Defendants.

## OPINION AND ORDER

This is a breach of warranty action. It is before the Court on the Defendant

Keystone RV Company's Partial Motion to Dismiss [Doc. 2] and the Defendants

Camping Time RV Centers, LLC and Bank of America, N.A.'s Motion to Dismiss

[Doc. 3]. For the reasons set forth below, the Defendant Keystone RV Company's

Partial Motion to Dismiss [Doc. 2] is GRANTED in part and DENIED in part, and the

Defendants Camping Time RV Centers, LLC and Bank of America, N.A.'s Motion

to Dismiss [Doc. 3] is GRANTED in part and DENIED in part.

# I. Background

This case arises out of the purchase of an allegedly defective RV camper. On March 21, 2016, the Plaintiff Charles Clifton Hemmings purchased a 2016 Keystone 422 Fuzion Fifth Wheel RV camper (the "Camper") for over $70,000.[1] The Camper was manufactured by Defendant Keystone RV Company ("Keystone") and sold to the Plaintiff by the Defendant Camping Time RV Centers ("Camping Time").[2] The Plaintiff and Camping Time signed a binding purchase contract (the "Sales Agreement"), which contained, among other things, a disclaimer of warranties and limitation of remedies.[3] The Camper came with a "Limited One Year Warranty" provided by Keystone.[4] This limited warranty provided that the Camper would be free from defects in "materials and workmanship supplied and attributable to Keystone," and that Keystone would repair or replace in the event that a defect exists.[5]

---

[1] Compl. ¶ 4 [Doc. 1-1].

[2] Id.

[3] Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, Ex. A.

[4] Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, Ex. B.

[5] Id.

Subsequently, the Plaintiff discovered defects with the Camper, and brought it to the Defendants to make necessary repairs.[6] The Plaintiff was told that all repairs would be made under the warranty.[7] On July 31, 2016, the Plaintiff returned to pick up the Camper after this attempted repair. However, the air conditioning unit still did not function properly.[8] Camping Time's employees then discovered that there was a breach in the air conditioning duct.[9] Camping Time had never dealt with an issue like this before, and did not know how to repair it.[10] Overall, Camping Time attempted repairs, without success, from July 31, 2016 to September 5, 2016.[11] The air conditioning defect still remains unrepaired.[12]

The Plaintiff and his wife communicated with various employees over the course of the attempted repairs.[13] Camping Time's employees advised the Plaintiff that Keystone's recommended repair of this defect would be to cut a hole in the ceiling of

---

[6]    Compl.  ¶ 5.

[7]    Id.

[8]    Id. ¶ 6.

[9]    Id. ¶ 7.

[10]    Id.

[11]    Id. ¶¶ 5-6.

[12]    Id. ¶ 7.

[13]    Id. ¶¶ 8-9.

the Camper and use duct tape to tape the air conditioning vents back together. The Plaintiff found this repair unacceptable, and rejected it.[14] Camping Time submitted a request to Keystone to make necessary repairs, which Keystone allegedly refused to acknowledge.[15] Keystone advised Camping Time that the appropriate solution was to cut into the ceiling panel to repair the air conditioning duct, as it had previously suggested.[16]

On October 14, 2016, the Plaintiff's counsel wrote Camping Time, Keystone, and Bank of America to advise them of the problems with the Camper, and demand that they repurchase the Camper.[17] The Plaintiff also demanded that Bank of America refund "all monies paid to date."[18] Keystone then attempted one more unsuccessful repair, and returned the Camper to the Plaintiff with the defects still in place.[19]

On February 28, 2017, the Plaintiff filed this suit against the Defendants in state court. The Plaintiff asserts claims for breach of express and implied warranties,

---

[14] Id. ¶ 8.

[15] Id. ¶ 10.

[16] Id. ¶ 13B.

[17] Id. ¶ 12.

[18] Id.

[19] Id. ¶ 13.

revocation of acceptance, rejection of defective tender, violation of the Magnuson-Moss Warranty Act, and violation of the FTC Holder Rule. The Defendants removed to this Court, and now move to dismiss.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[20] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[21] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[22] Generally, notice pleading is all that is required for a valid

---

[20]     Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[21]     Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[22]     See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

complaint.[23] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[24]

## III. Discussion

### A. Rejection of Defective Tender and Revocation of Acceptance

#### 1. Keystone

First, Keystone argues that Counts I and II for rejection of defective tender and revocation of acceptance should be dismissed due to lack of privity between it and the Plaintiff.[25] The Plaintiff concedes that he is not asserting these two claims against Keystone.[26] Therefore, Counts I and II are deemed abandoned as to Keystone.

#### 2. Camping Time and Bank of America

Next, Camping Time and Bank of America move to dismiss the Plaintiff's claims for rejection of defective tender and revocation of acceptance. They argue that

---

[23] See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[24] See Erickson v. Pardus, 551 U.S. 89, 93 (2007).

[25] Def. Keystone RV Company's Mot. to Dismiss, at 3-4.

[26] Pl.'s Resp. Br. in Opp'n to Def. Keystone RV Company's Mot. to Dismiss, at 2.

the Sales Agreement excluded these remedies.[27] The Plaintiff responds that he has stated a valid claim for revocation of acceptance because he has "create[d] a factual question on defects substantially impairing the value" of the Camper, because the limitation of remedies does not apply to failure to comply with the warranties, because the limitation of remedies fails of its essential purpose, and because the limitation on remedies is unconscionable.[28]

O.C.G.A. § 11-2-719(1) allows for the modification or limitation of remedies in a contract. It states that a contract may provide for remedies in addition to or in substitution for those provided by the UCC and may also limit or alter the measure of damages recoverable.[29] However, Camping Time's limitation of remedies does not apply to revocation of acceptance. "[R]evocation of acceptance under O.C.G.A. § 11-2-608 is an available remedy even where the seller has attempted to limit its

---

[27]     Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 3-4.

[28]     Pl.'s Resp. Br. in Opp'n to Def. Camping Time RV Centers, LLC and Bank of American, N.A.'s Mot. to Dismiss, at 3-16.

[29]     O.C.G.A. § 11-2-719(1).

warranties."[30] Therefore, the limitation of remedies does not preclude the Plaintiff from asserting a claim for revocation of acceptance.

Furthermore, even if the parties could exclude revocation of acceptance as an available remedy, Camping Time's limitation of remedies would fail. The ability to modify remedies under the UCC is not without limit. O.C.G.A. § 11-2-719(2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."[31] A seller such as Camping World cannot disclaim *all* contractual remedies entirely. Instead, there must be some modicum of relief available to a buyer for a breach of a contract.

> The Official Comment to [O.C.G.A. § 11-2-719] states: "[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article *they must accept the legal consequence that there be at least a fair quantum of remedy for breach* of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed."[32]

---

[30] Esquire Mobile Homes, Inc. v. Arrendale, 182 Ga. App. 528, 529 (1987); see also Hub Motor Co. v. Zurawski, 157 Ga. App. 850, 851 (1981); Jacobs v. Metro Chrysler-Plymouth, Inc., 125 Ga. App. 462, 467 (1972).

[31] O.C.G.A. § 11-2-719(2).

[32] Freeman v. Hubco Leasing, Inc., 253 Ga. 698, 705 (1985).

Thus, a limitation of remedies that leaves a buyer without any recourse against a seller is subject to deletion as being unconscionable.

In <u>Freeman</u>, the court found an automobile lessor's exclusion of remedies to be unconscionable. The lease at issue excluded all remedies except those that the lessee may have had against the manufacturer and dealer.[33] The court found that this limitation of remedies was unconscionable, and allowed the lessee to pursue a revocation of acceptance claim against the lessor.[34] The court noted that O.C.G.A. § 11-2-719 allows parties to substitute remedies and limit damages, but does not allow them to "bar all remedies and avoid all damages."[35] The agreement here left the lessor without any responsibility, despite the fact that it had entered into a contract with the buyer.[36] Thus, the disclaimer was unconscionable, and the lessee could assert a claim of revocation of acceptance.[37]

Similarly, in <u>Esquire Mobile Homes, Inc. v. Arrendale</u>, the purchaser of a mobile home asserted a claim for revocation of acceptance against the seller of the

---

[33]  <u>Id.</u>

[34]  <u>Id.</u>

[35]  <u>Id.</u>

[36]  <u>Id.</u>

[37]  <u>Id.</u>

mobile home.[38] The seller argued that it had excluded liability under the purchase agreement, and that the manufacturer, who was now defunct, was the sole source of relief.[39] The court concluded that this exclusion of remedies was unconscionable because, like in Freeman, the seller "took no responsibility for the merchantability and fitness of the mobile home despite [the buyer's] obligation to pay over $66,000."[40] The court once again noted that O.C.G.A. § 11-2-719 allows the parties to "provide substitute remedies and limit damages, not bar all remedies and avoid all damages."[41] Thus, the exclusion of remedies was unconscionable.[42]

Here, under the facts alleged in the Complaint, Camping Time's limitation of remedies in the Sales Agreement is unconscionable because it eliminates all remedies except for those provided by the manufacturer. The Sales Agreement provided that the manufacturer's warranty constituted the Plaintiff's "exclusive and sole remedy for any problems or defects" and that "any other potentially available remedy, under the Uniform Commercial Code or otherwise, including but not limited to rejection,

---

[38]    Esquire Mobile Homes, Inc. v. Arrendale, 182 Ga. App. 528, 528 (1987).

[39]    Id. at 529.

[40]    Id. at 530.

[41]    Id.

[42]    Id.

rescission, or revocation of acceptance, are hereby disclaimed by and unavailable against" Camping Time.[43]

Similar to the dealers in <u>Freeman</u> and <u>Esquire Mobile Homes</u>, Camping Time rejected all contractual responsibility for the performance of the Camper, and provided the Plaintiff with no minimal amount of adequate relief, despite the Plaintiff being obligated to pay over $70,000 under the Sales Agreement. Instead, the Plaintiff's only option under the Sales Agreement was to pursue a remedy from Keystone, the manufacturer. This exclusion of remedies barred all remedies against Camping Time and allowed Camping Time to avoid all damages. Like in <u>Freeman</u> and <u>Esquire Mobile Homes</u>, this total bar is unconscionable. Consequently, Camping Time's disclaimer is ineffective, and the Plaintiff can assert claims for revocation of acceptance and rejection of defective tender.

Camping Time and Bank of America argue that <u>Freeman</u> and <u>Esquire Mobile Homes</u> are distinguishable because the Plaintiff here still has a meaningful source of relief under the manufacturer's warranty provided by Keystone. However, in <u>Freeman</u>, like in the case at hand, the buyer-lessee was also provided with a manufacturer's

---

[43]     Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, Ex. A.

warranty, and the manufacturer had even attempted repairs on the car.[44] Nonetheless, the court found that the lessor's total disclaimer of remedies was unconscionable because the lessor accepted no responsibility under the contract.[45] Furthermore, both Freeman and Esquire Mobile Homes focus on the seller's total rejection of contractual responsibility as being unconscionable, not whether other remedies possibly exist.[46] Thus, the inquiry should not focus on whether other remedies may exist with other parties in the supply chain, but instead whether the limitation of remedies allows the seller to avoid all liability under the contract. Therefore, the Plaintiff's claims in Counts I and II should not be dismissed.

---

[44] Freeman v. Hubco Leasing, Inc., 253 Ga. 698, 700 (1985).

[45] Id. at 705.

[46] See id. at 705; Esquire Mobile Homes, 182 Ga. App. at 530.

**B. Express Warranty**

Next, Camping Time and Bank of America move to dismiss the Plaintiff's express warranty claim. They argue that Camping World explicitly disclaimed any express warranty in the Sales Agreement.[47] The Plaintiff responds that Camping Time adopted the Keystone's express warranty by delivering the express warranty to the Plaintiff and assuming performance of the warranty.[48]

In support of his argument, the Plaintiff cites <u>Freeman v. Hubco Leasing, Inc.</u>[49] In <u>Freeman</u>, the plaintiff experienced a number of problems with a new car that he began leasing.[50] The plaintiff sued both the dealer and the lessor after the defects in the car went unrepaired.[51] The dealer argued that it could not be held liable for breach of warranty because it disclaimed all warranties in its agreement with the plaintiff.[52] Despite this disclaimer, the court held that the dealer could be held liable for breach

---

[47]    Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 8.

[48]    Pl.'s Resp. Br. in Opp'n to Def. Camping Time RV Centers and Bank of America, N.A.'s Mot. to Dismiss, at 17-18.

[49]    253 Ga. 698 (1985).

[50]    <u>Id.</u> at 699.

[51]    <u>Id.</u>

[52]    <u>Id.</u> at 701-02.

of express warranty, because it had adopted and transmitted to the plaintiff a manufacturer's warranty.[53]

However, the warranty in <u>Freeman</u> was both "adopted and transmitted by the dealer." The key fact is that the dealer adopted the warranty and assumed its performance, and not that it merely transmitted it to the plaintiff.[54] Further, in a New Jersey case that <u>Freeman</u> relied upon in reaching this conclusion, the dealer transmitted the manufacturer's warranty and also agreed "to promptly perform and fulfill all terms and conditions of the owner service policy."[55] The dealer there explicitly agreed to assume this performance in the sales agreement with the buyer.[56]

Here, in contrast, Camping Time did not adopt the manufacturer's warranty or assume performance of the warranty. In fact, the Sales Agreement explicitly stated that "Dealer does not affirm or adopt any manufacturer warranty(s) available to this Unit or any of its components."[57] This is in contrast to the dealer in <u>Freeman</u>, which

---

[53]     <u>Id.</u> at 702.

[54]     <u>Id.</u>

[55]     <u>Ventura v. Ford Motor Corp.</u>, 433 A.2d 801, 807-08 (N.J. Super. Ct. App. Div. 1981).

[56]     <u>Id.</u> at 807.

[57]     Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, Ex. A.

the court emphasized "never disclaimed responsibility for making repairs covered by the manufacturer's warranty, which responsibility is the basis of our holding above."[58] Thus, a key part of the <u>Freeman</u> court's holding was that the dealer did not disclaim adoption of the manufacturer's warranty. Additionally, Camping Time did not agree to assume performance of the manufacturer's warranty in the Sales Agreement. The facts alleged do not indicate that Camping Time adopted the manufacturer's warranty or assumed the performance of this warranty, as the dealers did in <u>Freeman</u> and <u>Ventura</u>. Therefore, since Camping Time did not adopt the manufacturer's warranty, and made no express warranty of its own, the Plaintiff's claim for breach of express warranty against Camping Time and Bank of America should be dismissed.

## C. Implied Warranty

### 1. Camping Time and Bank of America

Next, Camping Time and Bank of America move to dismiss the Plaintiff's implied warranty claim. They argue that Camping Time effectively disclaimed all warranties in the Sales Agreement. Under Georgia law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant

---

[58]     <u>Freeman</u>, 253 Ga. at 702.

with respect to goods of that kind."[59] "This warranty protects consumers from defects or conditions existing at the time of sale."[60] To recover for breach of the implied warranty of merchantability, a plaintiff must show that there was a defect, that the defect existed at the time of sale, and that the defect made the product unmerchantable.[61]

Camping Time and Bank of America argue that Camping Time effectively disclaimed all warranties, including the implied warranty of merchantability, in the Sales Agreement.[62] O.C.G.A. § 11-2-316 governs the disclaimer of warranties. It provides that "[s]ubject to subsection (3) of this Code section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."[63]

---

[59]     O.C.G.A. § 11-2-314(1).

[60]     Dildine v. Town & Country Truck Sales, Inc., 259 Ga. App. 732, 734 (2003).

[61]     Id.

[62]     Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 10.

[63]     O.C.G.A. § 11-2-316(2).

A term is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it."[64] This includes "[a] heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size" and "[l]anguage in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language."[65]

The disclaimer here meets these requirements. The Sales Agreement disclaims express and implied warranties in two locations.[66] In both of these locations, the disclaimer is bolded, underlined, and in capitals. It also specifically mentions the word "merchantability."[67] Therefore, Camping Time's disclaimer of the implied warranty of merchantability is valid because it meets the requirements of O.C.G.A.

---

[64]    O.C.G.A. § 11-1-201(b)(10).

[65]    <u>Id.</u>

[66]    Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, Ex. A.

[67]    <u>Id.</u>

§ 11-2-316. For these reasons, the Plaintiff's implied warranty claim should be dismissed as to Camping Time and Bank of America.

## 2. Keystone

Next, Keystone argues that the Plaintiff's implied warranty claim against it fails due to lack of privity between it and the Plaintiff.[68] The Court disagrees. Ordinarily, no implied warranty of merchantability runs from a manufacturer to an ultimate consumer since no privity of contract exists between them.[69] Since an implied warranty of merchantability arises out of a contract of sale of goods, the warranty can only extend to buyers who are in privity of contract with a seller.[70] Thus, when a consumer purchases a product from a retailer, no implied warranty runs from the manufacturer to the consumer due to this lack of contractual privity.[71]

However, the extension of an express warranty from a manufacturer to the end consumer can establish privity, despite the lack of a contract. For example, the Georgia Court of Appeals has stated that "[w]here an automobile manufacturer, through its

---

[68]    Def. Keystone RV Company's Mot. to Dismiss, at 4.

[69]    Chaffin v. Atlanta Coca Cola Bottling Co., 127 Ga. App. 619 (1972).

[70]    Id.

[71]    Id.

authorized dealer, issues to a purchaser of one of its new automobiles from the dealer a warranty as part of the sale, certainly an implied warranty of merchantability is in effect despite the lack of actual privity."[72] Thus, where the manufacturer extends an express warranty to the end consumer, privity is created that satisfies the requirements of the implied warranty of merchantability.

Here, Keystone offered an express warranty to the Plaintiff.[73] This express warranty established the privity necessary for the implied warranty of merchantability to run between the Plaintiff and Keystone. Therefore, the Plaintiff's claim does not fail due to lack of privity.

Nonetheless, a manufacturer can still limit or disclaim this implied warranty, just as a normal seller can under O.C.G.A. § 11-2-316.[74] In its express warranty,

---

[72] Lauria v. Ford Motor Co., 169 Ga. App. 203, 205 (1983); see also Chrysler Corp. v. Wilson Plumbing Co., 132 Ga. App. 435, 437 (1974) (noting that "privity exists" and implied warranties become operative when an automobile manufacturer issues a warranty to the consumer); Jones v. Cranman's Sporting Goods, 142 Ga. App. 838, 842 (1977) ("The weapon here was 'fully guaranteed' by the distributor to the ultimate consumer. As such it became part of the bargain of sale and thus privity existed.").

[73] Compl. ¶¶ 38-39; Def. Keystone RV Company's Mot. to Dismiss, Ex. B.

[74] See Chrysler Corp., 132 Ga. App. at 437 ("The manufacturer, therefore, if it desires to exclude the implied warranty arising by operation of law, must meet the requirements of Code s 109A-2-316(2), that is, by a writing expressly referring to merchantability which exclusion of the implied warranty must be conspicuous.");

Keystone disclaimed all other warranties besides its limited express warranty. It stated that "[t]his warranty is expressly in lieu of all other warranties, express or implied, including any implied warranty of merchantability" and that any implied warranties given by law "shall be limited to and not extend beyond the scope and beyond the duration of the written limited warranty period."[75]

However, the Magnuson-Moss Warranty Act ("Magnuson-Moss") prevents Keystone from disclaiming implied warranties. Section 2308(a) of Magnuson-Moss prohibits a seller from disclaiming implied warranties if an express warranty is provided.[76] Instead, a seller may only limit the implied warranty to the duration of the written warranty, if reasonable.[77] Any attempt to disclaim implied warranties would be ineffective.[78] Since Keystone provided an express warranty, and since an implied warranty exists under Georgia law, Magnuson-Moss prohibits Keystone from

Jones, 142 Ga. App. at 406 ("The Statement fully guaranteeing the rifle failed to limit the warranty made or to exclude any implied warranties.").

[75]    Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, Ex. B.

[76]    See 15 U.S.C. § 2308(a); see also Global Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1031 (11th Cir. 2017).

[77]    15 U.S.C. § 2308(b).

[78]    Global Quest, LLC, 849 F.3d at 1031.

disclaiming this implied warranty. Keystone's attempted disclaimer is ineffective, and the implied warranty still exists for the duration of the express warranty provided by Keystone. Therefore, Keystone's motion to dismiss the implied warranty claim is denied.

### D. Magnuson-Moss Warranty Act

Next, the Plaintiff asserts violations of Magnuson-Moss in Counts V and VI. The Plaintiff alleges that the Defendants breached both a written warranty and the implied warranty of merchantability, which is actionable under Magnuson-Moss.[79] The Defendants move to dismiss these claims. They argue that Magnuson-Moss does not provide an independent cause of action, but instead only provides additional damages for breaches of warranties under state law.[80]

Magnuson-Moss provides consumers with a right of action against a person who fails "to comply with any obligation under . . . a written warranty, implied warranty, or service contract."[81] It "does not require manufacturers of consumer goods to provide warranties, rather it creates specific duties and liabilities for the

---

[79]     Compl. ¶¶ 56-65.

[80]     Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 11-12; Def. Keystone RV Company's Mot. to Dismiss, at 5-6.

[81]     15 U.S.C. § 2310(d).

manufacturer that chooses to do so."[82] It also "does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law."[83] Magnuson-Moss only "relates to damages, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for breaches of warranty under state law."[84] For this reason, Magnuson-Moss "supplements, rather than supplants state law."[85]It applies the state law of written and implied warranties.[86]

Consequently, the Plaintiff cannot assert an independent cause of action under Magnuson-Moss. Instead, he will only be able to claim additional damages under Magnuson-Moss to the extent that he can allege viable breach of warranty claims under Georgia law. Furthermore, since the Plaintiff has failed to state a claim for breach of express or implied warranty against Camping Time, his claims against Camping Time and Bank of America under Magnuson-Moss should be dismissed. The

---

[82] Monticello v. Winnebago Indus., Inc., 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005).

[83] Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005); see also Dildine v. Town & Country Truck Sales, Inc., 259 Ga. App. 732, 734 (2003) ("To recover, therefore, Dildine must show that Town & Country breached the implied warranty of merchantability arising under Georgia law.").

[84] Sharpe v. General Motors Corp., 198 Ga. App. 313, 314 (1991).

[85] Monticello, 369 F. Supp. 2d at 1356.

[86] Id.

Plaintiff's claims for additional damages under Magnuson-Moss remain against Keystone, insofar as the Plaintiff can maintain claims for breach of implied and express warranties.

### E. FTC Holder Rule

#### 1. Camping Time and Keystone

Camping Time and Keystone argue that Count VII, the Plaintiff's claim under the FTC Holder Rule, should be dismissed because they are not holders of the consumer credit contract.[87] The Plaintiff concedes that he is only asserting claims under the FTC Holder Rule against Bank of America.[88] Therefore, this claim is dismissed as to Keystone and Camping Time.

#### 2. Bank of America

Next, Bank of America argues that the Plaintiff's FTC Holder Rule claim should be dismissed because it "has all defenses available to Camping World."[89] The

---

[87] Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 12-13; Def. Keystone RV Company's Mot. to Dismiss, at 6-7.

[88] Pl.'s Resp. Br. in Opp'n to Def. Keystone RV Company's Mot. to Dismiss, at 1.

[89] Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 13.

Plaintiff responds that "he agrees" that his claims against Bank of America under the

Holder Rule are "derivative claims."[90]

The FTC Holder Rule requires that any consumer credit contract for the sale or

lease of goods or services contain the following language:

> Any holder of this consumer credit contract is subject to all claims and
> defenses which the debtor could assert against the seller of goods or
> services obtained pursuant hereto or with the proceeds hereof. Recovery
> hereunder by the debtor shall not exceed amounts paid by the debtor
> hereunder.[91]

However, no private right of action exists under the Holder Rule.[92] Instead, it allows

a debtor to assert any claim or defense against a holder of a consumer credit contract

that it could assert against the seller.[93]

Thus, the Plaintiff cannot assert an independent cause of action under the

Holder Rule against Bank of America. The Holder Rule only allows the Plaintiff to

---

[90] Pl.'s Resp. Br. in Opp'n to Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 1.

[91] 16 C.F.R. § 433.2 (2016).

[92] Leonard v. The Momentum Grp., Inc., No. 1:14–CV–01074, 2015 WL 11236547, at *4 (N.D. Ga. Dec. 16, 2015).

[93] See Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 541 (E.D.N.Y. 2006); see also Simpson v. Anthony Auto Sales, Inc., 32 F. Supp. 2d 405, 410 (W.D. La. 1998) (discussing the "derivative liability" of creditors under the FTC Holder Rule).

assert claims that he has against Camping Time as derivative claims against Bank of America, since Bank of America is the "holder" of the consumer credit contract. The Plaintiff agrees that "his claims against Bank of America are derivative claims."[94] Therefore, the Plaintiff's independent claims under the FTC Holder Rule are dismissed.

---

[94]     Pl.'s Resp. Br. in Opp'n to Def. Camping Time RV Centers and Bank of America, N.A.'s Mot. to Dismiss, at 1.

### F. Exemplary Damages

Finally, the Defendants argue that the Plaintiff's claim for exemplary damages should be dismissed.[95] In Georgia, "[u]nless otherwise provided by law, exemplary damages shall never be allowed in cases arising on contracts."[96] Therefore, exemplary or punitive damages will not be recoverable for the Plaintiff's breach of contract and breach of warranty claims. The Plaintiff concedes that he "is not making any claim for punitive or exemplary damages as against Camping Time," but argues that "should Bank of America NA refuse to honor the FTC Anti Holder Clause contract language, it may be liable for punitive or exemplary damages for violation of the FTC Act or for violation of the Georgia Fair Business Practices Act."[97]

However, the Plaintiff cannot recover punitive or exemplary damages under the FTC Holder Rule. The Holder Rule explicitly states that recovery under the rule "shall

_____

[95] Def. Keystone RV Company's Mot. to Dismiss, at 7; Def. Camping Time RV Centers, LLC and Bank of America, N.A.'s Mot. to Dismiss, at 13.

[96] O.C.G.A. § 13-6-10; <u>see also</u> <u>Hester Enters., Inc. v. Narvais</u>, 198 Ga. App. 580, 582 (1991) ("Generally, punitive damages are not recoverable for breach of contract, even though the breach may be in bad faith.").

[97] Pl.'s Resp. Br. in Opp'n to Def. Keystone RV Company's Mot. to Dismiss, at 2; Pl.'s Resp. Br. in Opp'n to Def. Camping Time RV Centers, LLC and Bank of American, N.A.'s Mot. to Dismiss, at 2. The Plaintiff did not allege a violation of the Georgia Fair Business Practices Act in the Complaint. Therefore, the Court will not address this argument.

not exceed amounts paid by the debtor hereunder."[98] A debtor cannot recover more money under this rule than they have paid the holder under the contract. Thus, the Plaintiff's recovery against Bank of America under the Holder Rule, if any, will be limited to the money that he has paid to Bank of America under the contract, and nothing more.[99] Consequently, the Plaintiff's requests for punitive and exemplary damages should be dismissed.

## IV. Conclusion

For the reasons stated above, the Defendant Keystone RV Company's Partial Motion to Dismiss [Doc. 2] is GRANTED in part and DENIED in part, and the Defendants Camping Time RV Centers, LLC and Bank of America, N.A.'s Motion to Dismiss [Doc. 3] is GRANTED in part and DENIED in part.

---

[98]     16 C.F.R. § 433.2.

[99]     See Wait v. Roundtree Mobile, LLC, No. 15–00285–CG–M, 2015 WL 6964668, at *9 (S.D. Ala. Nov. 10, 2015) ("To the extent that Plaintiffs are entitled to damages pursuant to a claim under the FTC Holder Rule, the recovery is limited to the amount paid by Plaintiffs on the contract."); Simpson v. Anthony Auto Sales, Inc., 32 F. Supp. 2d 405, 409-10 (W.D. La. 1998) ("[A] creditor's derivative liability for seller misconduct under the FTC [Holder] rule is limited to the amount paid by the consumer under the credit contract.").

SO ORDERED, this 11 day of October, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge